WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,  Plaintiff,  v.  Martin Gutierrez-Barba,  Defendant. | No. CR-19-01224-001-PHX-DJH  **ORDER** |

Before the Court is the Defendant's Motion to Dismiss the Superseding Indictment (Doc. 74),[1] to which the Government has filed its Response (Doc. 91). The Defendant subsequently filed his Reply (Doc. 92), and the matter is now fully briefed. Neither party requested oral argument. The Court now issues its ruling.

**I.    Background**[2]

On September 30, 2019, the Defendant, Martin Gutierrez-Barba, was charged by Complaint for a violation of 8 U.S.C. § 1326(a), Reentry of a Removed Alien. (Doc. 1). The Complaint alleges that the Defendant, while being held in the Maricopa County Jail on local charges, was interviewed by Immigration Customs Enforcement ("ICE") who determined that he was illegally present in the United States. (*Id*. at 2). ICE records revealed that the Defendant was previously removed from the United States through Texas on November 19, 2015, pursuant to the reinstatement of a prior order of removal. (*Id*.)

---

[1] The Court denied the Defendant's first Motion to Dismiss Indictment. (*See* Docs. 37; 55).
[2] The Court's Order (Doc. 55) provides additional background of the case, primarily the events that occurred in the Defendant's prior removal proceedings. (Doc. 55 at 1–4).

The Defendant was detained on September 30, 2019. (Doc. 6).

The Defendant was indicted by a federal grand jury on October 22, 2019 on one count of Reentry of a Removed Alien in violation of § 1326(a). (Doc. 8). Subsequently, the Government sought and obtained a Superseding Indictment for the same charge but amending the place and date of his prior removal. (Doc. 18). The Defendant was thereafter released on his own recognizance, with conditions, pending the outcome of his case. (Doc. 24). On April 30, 2021, the Court held a status conference on the Defendant's pending case and set a trial date of June 1, 2021. Five days later, on May 5, 2021, the Defendant filed the instant Motion asserting that § 1326(a) violates the Equal Protection Clause of the United States Constitution.[3]

The Defendant's sole assertion is that the § 1326 was enacted with a discriminatory purpose, which disparately impacts a disfavored group, thus violating the Fifth Amendment. (Doc. 74 at 3). Defendant relies heavily on the Supreme Court's decisions in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977) and *Ramos v. Louisiana*, 140 S.Ct. 1390 (2020). He essentially argues that these two cases, together, stand for the proposition that "[b]ecause the facts and historical evidence presented here show that the original illegal reentry law was enacted with a discriminatory purpose and still has a disparate impact, § 1326 is presumptively unconstitutional." (Doc. 74 at 2).

**II.   Law**

The Fifth Amendment of the U.S. Constitution provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. In *Arlington Heights*, the Supreme Court examined whether a town's refusal to rezone a tract of land from single family to multi-family use to enable racially integrated housing to be built violated the Equal Protection Clause of the Fourteenth Amendment. 429 U.S. at

---

[3] The Court notes that this Motion is a variation of previously filed Motions to Dismiss 8 U.S.C. § 1325 charges on similar grounds in the Southern District of California. *See*, *e.g.*, *Rios-Montano*, 2020 WL 7226441, at *7 (S.D. Cal. Dec. 8, 2020); *Gallegos-Aparicio*, 2020 WL 7318124, at *3 (S.D. Cal. Aug. 13, 2020); *Morales-Roblero*, 2020 WL 5517594, at *10 (S.D. Cal. Sep. 14, 2020); *Lucas-Hernandez*, 2020 WL 6161150, at *3 (S.D. Cal. Oct. 21, 2020).

260. The Court held that proof of a racially discriminatory intent or purpose is required to show such violation and that official action will not be held unconstitutional solely because it results in a disproportionate impact among racial demographics. *Id*. at 265. The Court observed that courts generally refrain from reviewing the merits of legislative decisions because legislators are "properly concerned with balancing numerous competing considerations." *Id*. Consequently, when proof emerges that a discriminatory purpose is the motivating factor in the decision, such judicial deference is no longer justified. *Id*. at 265–66.

In *Ramos*, the Supreme Court held that two state laws that permitted convictions for serious offenses by nonunanimous jury verdicts violated the Sixth Amendment. 140 S.Ct. at 1408. In so doing, the Court examined the origins of the states' laws and noted that both states "acknowledged that race was a motivating factor in the adoption of their States' respective nonunanimity rules." *Id.* at 1394. Though it examined these legislative histories, ultimately, the Court's decision hinged on a robust discussion of *stare decisis*, abandoning its prior "badly fractured set of opinions" that had left undisturbed laws permitting convictions by nonunanimous juries. *Id*. at 1397–99 (discussing *Apodaca v. Oregon*, 406 U.S. 404 (1972) and *Johnson v. Louisiana*, 406 U.S. 356 (1972)).

Also relevant here, but which the Defendant fails to mention, the Supreme Court has observed that "the power over aliens is of a political character and therefore subject only to narrow judicial review." *Fiallo v. Bell et al*., 430 U.S. 787, 792 (1977) (citations omitted) (considering a constitutional challenge to the application of the Immigration and Nationality Act). The Ninth Circuit has thus opined that "[f]ederal laws that classify on the basis of alienage . . . receive less searching judicial review[.]" *United States v. Lopez-Flores*, 63 F.3d 1468, 1473 (9th Cir. 1995) (considering an equal protection challenge to the application of the Hostage Taking Act on offenders and victims based on their respective alienage). Federal courts have therefore historically and consistently applied a "deferential standard of review" when inquiring into the Congress' authority to legislate in areas related to immigration. *See Trump v. Hawaii*, 138 S.Ct. 2392, 2419 (2018).

Therefore, where federal interests predominate, as in the immigration area, judicial scrutiny is relaxed to a "rational basis" standard. *Lopez-Flores*, 63 F.3d at 1473 (citations omitted); *see also Hernandez-Mancilla v. Holder*, 633 F.3d 1182, 1185 (9th Cir. 2011) ("We review equal protection challenges to federal immigration laws under the rational basis standard[.]").

## III. Analysis

The statute in question, 8 U.S.C. § 1326, states in pertinent part:

(a) In general **-** Subject to subsection (b)[4], any alien who--

(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be fined under Title 18, or imprisoned not more than 2 years, or both.

Guided by the analysis in *Arlington Heights*, the Court will evaluate the statute's intent and purpose, and then it will examine how it impacts different demographics.

### a. Purpose and Intent

As an initial matter, the Court notes that its research, albeit not exhaustive, has not revealed any instance where *Arlington Heights* was applied to a federal criminal statute. In the Ninth Circuit, only one state criminal law has been struck down under *Arlington Heights*. In that case, *Democratic National Committee v. Hobbs*, plaintiffs challenged an Arizona law, House Bill 2023 (H.B. 2023), which criminalized third party delivery of voting ballots. 948 F.3d 989, 998 (9th Cir. 2020), *cert. granted sub nom. Arizona Republican Party v. Democratic Nat'l Comm.*, 141 S. Ct. 221 (2020), *and cert. granted sub nom. Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 222 (2020). The court, in

---

[4] Subsection (b) provided enhanced penalties of 10 and 20 years in custody for aliens who were previously removed following prior convictions for various crime.

- 4 -

consideration of abundant evidence, applied the *Arlington Heights* factors to conclude that H.B. 2023 violated the intent test of the Voting Rights Act and the Fifteenth Amendment. *Id.* at 1042 (noting the demonstrably false, race-based allegations of fraud that played an important role in H.B. 2023's passage). Yet, as will be discussed, this case offers little support for the Defendant's contention.

The Defendant argues § 1326 was enacted with a discriminatory purpose, thus, under *Arlington Heights* and *Ramos*, it violates his equal protection rights because "racism and eugenics were not only a 'motivating factor' but a 'primary factor' in the passage of 'this law.'" (Doc. 74 at 5). In support thereof, he provides historic legislative records about the "flood of immigration legislation" in the 1920's. (*Id.* at 6). While the Defendant's Motion is supported by numerous historic documents that reflect an "uncomfortable" sentiment and philosophy, he acknowledges that § 1326 "has been reenacted several times, most notably in the Immigration and Nationality Act of 1952." (*Id.* at 15). The Government responds that *Arlington Heights* and *Espinoza* are inapplicable because the statute that the Defendant complains about was enacted in 1952 and amended several times thereafter, and a that new illegal reentry law was subsequently enacted in 1996. (Doc. 91 at 6, 10).

Generally, "the starting point in discerning congressional intent is the existing statutory text, and not the predecessor statutes." *Lamie v. U.S. Tr.*, 540 U.S. 526, 527 (2004) (internal citations omitted). Implicit in this statement is that congressional intent does not necessarily carry over when a statute is amended. This sentiment is consistently observed by the courts. *See United States v. Price*, 361 U.S. 304, 332 (1960) ("[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one."); *United States v. Maxwell*, 386 F.3d 1042, 1065 (11th Cir. 2004), *cert. granted, judgment vacated*, 546 U.S. 801 (2005) ("Findings related to the amendments should be viewed with caution because they do not necessarily reflect Congress's intentions at the time the original statute was enacted.").

In the *Arlington Heights* line of cases, courts also consider the intent of subsequent

legislatures. *See, e.g.*, *Abbott v. Perez*, 138 S. Ct. 2305, 2325 (2018) ("[W]e have never suggested that past discrimination flips the evidentiary burden [of the intent test] on its head."); *United States v. Gallegos-Aparicio*, 2020 WL 7318124, at *3 (S.D. Cal. Dec. 11, 2020) ("In some situations, the legislative history of past enactments may be highly probative of the motivations of the legislators who enacted the current law, but the Court cannot automatically impute these past motivations to the current law and forgo analysis of the enacting legislature required by *Arlington Heights*."); *United States v. Lucas-Hernandez*, 2020 WL 6161150, at *3 (S.D. Cal. Oct. 21, 2020) (finding that 8 U.S.C. § 1325(a)(1) should not be judged according to legislative history from laws enacted decades before).

The Defendant's assertion that this Court must examine the 1920's legislative record wholly relies on his application of *Ramos* and *Espinoza v. Montana Department of Revenue*, 140 S.Ct. 2246 (2020). (Doc. 74 at 14–15). Defendant argues that these cases show that a discriminatory purpose is relevant to a law's constitutionality. (*Id.*) But the intent of the legislatures that passed the laws at issue in *Ramos* were not the decisive factors in the Court's decision; even if the legislatures has adopted the challenged laws "for benign reasons" they would still be unconstitutional. 140 S.Ct. 1401 n.44. The Court will not here stretch the bounds of *Ramos*' holding. In addition, a close examination of *Espinoza* does not offer the support that Defendant suggests. In *Espinoza*, Justice Alito's concurring opinion arguing that *Ramos* now requires the Court to examine the motivations behind the private school tuition assistance program was dismissed by Justice Sotomayor's observation that laws with an "uncomfortable past" are not automatically invalid due to their discriminatory origins. 140 S.Ct. at 2294 n.2 (Sotomayor, J. dissenting); *see also United States v. Lazcano-Neria*, 2020 WL 6363685 at *8 (S.D. Cal. Oct. 29, 2020) (observing the same).

Neither *Ramos* or *Espinoza* hold, as the Defendant asserts, that "courts must examine the racial motivations of a law at the time of its passage and later reenactments do not cleanse a law of its original taint." (Doc. 74 at 15). To illustrate, the Court finds

noteworthy that in 1965, the Immigration and Nationality Act ("INA") was amended to include a provision stating "[n]o person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence." Immigration and Nationality Act, Pub. L. No. 89-236, 66 Stat. 175, 911 (1965). The Act abolished national-origin quotas, and instead established a worldwide immigration limit and expanded the preference system. *Id.* Essentially, the people themselves adopted amendments to the INA aimed at prohibiting invidious discrimination to remove the "bad taint" of its prior iterations.

### b. Disparate Impact

The Defendant next argues that § 1326 has a "disparate impact on Mexican and other Latinx defendants." (Doc. 74 at 15–16). The Government acknowledges that higher percentages of Mexican and those of Latin American origin are prosecuted for § 1326 violations, but say that is only because of those regions' proximity to the United States and Mexico border. (Doc. 91 at 5). Indeed, numerous courts examining similar contentions have held that criminal immigration statutes do not disproportionately affect Mexican citizens because any disparate impact may be explained on grounds other than race, such as geographic proximity to the United States. *See, e.g.*, *United States v. Rios-Montano*, 2020 WL 7226441, at *7 (S.D. Cal. Dec. 8, 2020); *Gallegos-Aparicio*, 2020 WL 7318124, at *3; *United States v. Morales-Roblero*, 2020 WL 5517594, at *10 (S.D. Cal. Sep. 14, 2020); *Lucas-Hernandez*, 2020 WL 6161150, at *3.

Moreover, if the Court were to find a disparate impact sufficient for an equal protection claim, virtually any immigration policy could be challenged on equal protection grounds. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915 (2020). In *Department of Homeland Security*, the government terminated the Deferred Action for Childhood Arrivals program, which postponed the deportation of undocumented immigrants that were brought to the United States as children. *Id.* at 1911. The court held that because Latin American persons make up a large share of the unauthorized alien population, one would expect them to make up a large share of any immigration program;

therefore, if disparate impact were sufficient, virtually any immigration policy could be challenged. *Id.* at 1915–16, *see also Arlington Heights*, 429 U.S. 563 ("Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination.") (quoting *Washington v. Davis*, 426 U.S.229, 242 (1976)). The Defendant's disparate impact argument, therefore, fails.

Finally, the Defendant does not mention that the § 1326 statute applies to a class of people based upon a specific criminal act, regardless of alienage. And, the Ninth Circuit has observed "a distinction between statutes which classify based on alienage and statutes which classify based on criminal actions. Given Congresses' plenary power over immigration, imposing different rules on immigrants versus citizens does not in itself create a suspect classification." *United States v. Mendoza-Hinojosa*, 216 F.3d 1085 (9th Cir. 2000) (citations omitted); *see also United States v. Mazariegos-Ramirez*, 2019 WL 338923 at *2 (S.D. Cal. Jan. 28, 2019) (finding 8 U.S.C. § 1325(a)(2) creates a class based upon criminal action, not alienage). The Defendant's alleged criminal conduct of having been previously removed and reentering the United States without consent of the Attorney General or the Secretary of Homeland Security, further defeats his claims of disparate treatment. The Court finds that there is no disparate impact to the Defendant, a Mexican citizen.

Ultimately, the Court finds that neither *Arlington Heights* nor *Ramos* provide a basis upon which this Court may dismiss the pending criminal Indictment.

### c. Rational Relation to Legitimate Purpose

Finding that neither *Arlington Heights* nor *Ramos* govern the Court's analysis, the Court will next examine § 1326 under a rational basis review. The Government argues that there is a legitimate interest in deterring illegal reentry and there is a clear rational relationship between that interest and Section 1326 which criminalizes and deters illegal reentry. (Doc. 91 at 4). The Court agrees. Indeed, the challenged statute has survived prior judicial scrutiny because it "plainly reveals its immigration-regulation purposes." *See United States v. Hernandez-Guerrrero*, 147 F.3d 1075, 1078 (9th Cir. 1998). In

*Hernandez-Guerrerro*, the Ninth Circuit, in finding that Congress had plenary authority to enact § 1326, noted "[b]y threatening with criminal prosecution any alien found in the United States who has previously been 'excluded, deported, or removed,' Congress sought in the § 1326 to give teeth to civil immigration statutes and to ensure compliance with civil deportation orders. And, the Ninth Circuit has specifically recognized that '8 U.S.C. § 1326 is designed to effectively enforce immigration laws.'" *Id.* (citing *United States v. Barron-Rivera*, 922 F.2d 549, 555 (9th Cir. 1991)). The Court therefore finds that 8 U.S.C. § 1326 is rationally related to a legitimate government interest and that Congress acted within its plenary authority over immigration-related matters in enacting the statute.

Accordingly,

**IT IS HEREBY ORDERED** denying the Defendant's Motion to Dismiss the Indictment (Doc. 74).

**IT IS FURTHER ORDERED** reaffirming the date and time for the Final Pretrial Conference and Trial.

Dated this 25th day of May, 2021.

Honorable Diane J. Humetewa
United States District Judge