UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

————————————

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | CR-19-1224-PHX-DJH |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | June 17, 2021 |
| Martin Gutierrez-Barba, | ) | 2:01 p.m. |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ————————————————— | ) | |

BEFORE:   THE HONORABLE DIANE J. HUMETEWA, JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

ORAL ARGUMENT


APPEARANCES:
For the Government:
          U.S. Attorney's Office
          By: ABBIE BROUGHTON MARSH, ESQ.
          40 North Central Avenue, Suite 1800
          Phoenix, AZ  85004

For the Defendant Gutierrez-Barba:
          Federal Public Defender's Office
          By: MATTHEW DEATES, ESQ.
          850 West Adams Street, Suite 201
          Phoenix, AZ  85007



Official Court Reporter:
Linda Schroeder, RDR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 32
Phoenix, Arizona  85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1          (Defendant appears through video teleconference system.)

2               THE CLERK:  This is case number CR 19-1224,

3     United States of America versus Martin Gutierrez-Barba, on for

4     oral argument.

5               MS. MARSH:  Good afternoon, Your Honor.  Abbie Marsh

6     for the United States.

7               THE COURT:  Good afternoon.

8               MR. DEATES:  Good afternoon, Your Honor.  Matthew

9     Deates on behalf of Martin Gutierrez-Barba, who is appearing by

10    video with his consent.

11              THE COURT:  All right.  Good afternoon to you,

12    Mr. Deates.  Good afternoon to you, Mr. Gutierrez-Barba.  You

13    are appearing in this hearing through the video teleconference

14    system.  It's important that you hear everything that is being

15    said.  My understanding is that you have consented to appear in

16    this hearing through the video teleconference system; is that

17    correct?

18              THE DEFENDANT:  Yes.

19              THE COURT:  All right.  So please do make sure that

20    you're able to hear all of us.  And if there's for some reason

21    any problem in doing so, please let me know.

22              All right.  I have received the what I will construe

23    as Mr. Gutierrez-Barba's motion to reconsider.  I've received

24    the government's response thereto.  And you may proceed.

25              MR. DEATES:  Yes, Your Honor.  We are proceeding under

UNITED STATES DISTRICT COURT

1   18 U.S.C. 3143(a).  And that statute provides that if the Court
2   finds by clear and convincing evidence that Mr. Gutierrez is
3   neither likely to flee nor pose a danger to the community, the
4   Court shall order Mr. Gutierrez's release.
5        The statute's use of the word shall is important.
6   This mandatory language means that so long as Mr. Gutierrez
7   produces sufficient evidence that he is neither likely a flight
8   risk nor a danger, it is illegal to detain him pending
9   sentencing.
10        And Mr. Gutierrez has met his burden on this issue.
11   I'd like to begin with the release status report that pretrial
12   services submitted to the Court on June 1st, 2021.  And this is
13   filed at docket number 110.
14        In this status report, pretrial services explains that
15   Mr. Gutierrez, quote, has been compliant with his release
16   conditions.  He has reported as directed by pretrial services
17   and maintained a stable residence.  He also has, quote,
18   maintained stable employment through his period of release.
19        In addition, pretrial services, quote, has maintained
20   contact with Mr. Gutierrez's brother, who is his third-party
21   custodian, and he reports that Mr. Gutierrez has been compliant
22   with his release conditions.
23        Pretrial services also reports that it conducted a
24   criminal record check for Mr. Gutierrez on June 1st.  That
25   investigation, quote, revealed no new arrests, warrants, or

1    convictions.

2         Because of Mr. Gutierrez's exemplary performance on

3    pretrial release, which lasted for more than 18 months, from

4    November, 2019, to June, 2021, pretrial services recommended

5    that Mr. Gutierrez, quote, be allowed to remain released

6    pending sentencing.

7         This report was signed not only by the pretrial

8    services officer who supervised Mr. Gutierrez but also her

9    supervising officer.

10        And we submit that this status report by itself could

11   establish by clear and convincing evidence that Mr. Gutierrez

12   is not a flight risk or a danger.  He performed perfectly on

13   pretrial release for more than 18 months.

14        But we don't rely on the status report alone.  As the

15   Court is aware, Mr. Gutierrez showed up for every court

16   hearing.  He showed up after the government finished its

17   presentation of the evidence during the bench trial.  At that

18   time he knew he would likely be found guilty because he did not

19   contest any of the government's evidence at trial, yet he

20   showed up early for the afternoon session where the Court

21   ultimately found him guilty and took him into custody.

22        We also rely on the pretrial services bail report that

23   was filed in November of 2019 before Judge Burns ordered him

24   released.  That document is 17 on the court's docket.

25        That report reveals that Mr. Gutierrez has no

1   convictions that are related to anything besides immigration

2   violations.

3          He has no felonies on his record besides the instant

4   1326 conviction.  And he has no convictions for any crimes that

5   are violent or dangerous.  And that's because he's not a

6   violent or dangerous person.  He's not a danger to the

7   community.

8          Instead, his record reflects a man who has substantial

9   ties and deep family commitments in the United States.

10         When he was just seven years old, his parents brought

11  him to live in the United States.  And he's lived in Arizona

12  for most of his life.  He has five brothers and three sisters

13  in Arizona, all of whom have legal status here.  And some of

14  his siblings are here today in court to support him.

15         His mother also lives in Arizona, and she's currently

16  elderly and in poor health.  And Mr. Gutierrez routinely

17  pitches in with his other siblings to help care for her.

18         Mr. Gutierrez has made a life for his family here in

19  Arizona, specifically in Gilbert.  We have submitted the lease

20  agreement for his home.  And that agreement shows that he is

21  the sole tenant who signed the lease with his landlord.  He has

22  rented this home since 2016.  His address is reflected in the

23  lease agreement and is also on file with pretrial services.  He

24  pays $1,000 in rent each month, and he put down $700 as a

25  security deposit with his landlord.  These are substantial ties

1    to the community.

2            THE COURT:  Well, Mr. Deates, let me ask you this

3    question.  What I have before me is a lease agreement that was

4    signed in October for the time frame of October, 2016.  And

5    then the other document I have says commencing January 1 of

6    2020.

7            Where do I see the length of this lease agreement?

8    Where is that in the lease agreement?

9            MR. DEATES:  So the first document, the first sheet

10   that is on the exhibit -- this is Exhibit 1 -- the first sheet

11   is the current lease.  And that lease was signed commemorating

12   the lease to begin January 1st of 2020.

13           THE COURT:  Yes.  And it's a 12-month tenancy.  So it

14   would have expired January, 2021.

15           MR. DEATES:  That's correct, Your Honor.  And I

16   apologize I do not have the current lease.  All I had available

17   was the 2020 lease and the 2016 lease.

18           THE COURT:  Is he currently in the same location at

19   the same residence?

20           MR. DEATES:  Yes, yes.  And pretrial services could

21   verify that.

22           In addition to the leases, we've also submitted his

23   utility bills from the Town of Gilbert, his Internet bills, and

24   his car title.  These bills are in his name, and the car title,

25   which is filed with the State of Arizona, is also in his name.

1    We've also submitted bank statements, which show that he has

2    maintained a savings account in the United States since at

3    least 2017.  And we've also submitted records from the Gilbert

4    Public Schools.

5              THE COURT:  And I do have a question about the bank

6    records.

7              MR. DEATES:  Sure.

8              THE COURT:  I didn't see it, but is there a travel

9    restriction on Mr. Gutierrez-Barba?

10             MR. DEATES:  He does have a travel restriction.

11   That's noted in the status report that the Court received on

12   June 1st.

13             THE COURT:  So I do want some clarity about -- I saw a

14   bank statement where there were withdrawals, I believe, in

15   Fresno, California, back in May.

16             There were some withdrawals that occurred May 4th.

17   And then all of a sudden May 7th and May 10th there were

18   withdrawals in Fresno.

19             MR. DEATES:  Could you point me to the page that the

20   Court is looking at?

21             THE COURT:  It is -- Well, it's Page 3 of 4.  It's in

22   the Exhibit 5.  I guess it would be --

23             MR. DEATES:  I see that, Your Honor.

24             THE COURT:  Well, they're repeat pages.  So it's Page

25   3 of 4.

1          MR. DEATES:  I see that.  It's May 7th, 2021, and --

2          THE COURT:  Yes.

3          MR. DEATES:  -- May 10th, 2021.

4          THE COURT:  Yes.

5          MR. DEATES:  I can't speak to these exact withdrawals.

6   I don't know whether somebody can withdraw money from a bank in

7   Fresno from Arizona.  And I will note that Mr. Gutierrez is not

8   the only person on this bank account.  He's on there jointly

9   with his wife Claudia.

10         THE COURT:  Mr. Gutierrez-Barba, do you know who made

11  that withdrawal from Fresno, California, from your bank account

12  in May, May 7th and May 10th?

13         THE DEFENDANT:  I had an ankle monitor, and they gave

14  me a week to go visit California and come back.  But it was

15  application that I have permission from the ICE department

16  because I have the ankle monitor.

17         THE COURT:  Did I understand you correctly that you

18  had an ankle monitor?

19         THE DEFENDANT:  Yes.  I had the ankle monitor since I

20  got out.

21         THE COURT:  And --

22         THE DEFENDANT:  And I asked for permission.  I asked

23  for permission to go to California for vacation for four days.

24         THE COURT:  Who did you ask permission to?

25         THE DEFENDANT:  It's the person that was in charge of

UNITED STATES DISTRICT COURT

1    the ankle monitor.  That's the one that gave me permission.

2    Without them I can't go nowhere.

3              MS. MARSH:  May I address the conditions of release,

4    Your Honor?

5              THE COURT:  Yes.

6              MS. MARSH:  It might be helpful to the Court.

7              Back in -- Defense counsel was referring to document

8    17 in this case where Judge Burns released the defendant.

9              The government agreed with his release at that time.

10   His daughter was ill and hospitalized.  And the government

11   worked with ICE, another branch of the government, to get

12   approvals through ICE for him to be monitored by ICE as well as

13   by pretrial.

14             So essentially he's on release with two sets of

15   conditions, pretrial conditions and the conditions that ICE

16   placed on him for his release into the community, given his

17   status.

18             So it sounds to me as though he received permission to

19   travel.  And the travel restriction is applicable in both sets

20   of conditions.  And it sounds to me as though he received

21   permission to travel from ICE but maybe not from pretrial.  And

22   I don't know that that will change the Court's position here.

23             But I do think probably, without confirming with

24   pretrial whether he received permission from pretrial as well,

25   that would probably be in violation of the pretrial conditions.

1    Circumstances like this are rare, and it's difficult when

2    defendants are supervised by two separate entities in this way.

3    But I do think that he was on notice at the time he was

4    released by pretrial or from federal court to ICE that he was

5    essentially under two different sets of conditions.

6              THE COURT:  All right.  Mr. Deates, you may continue.

7              MR. DEATES:  Yes, Your Honor.  So it appears that he

8    did get permission from the government to travel to Fresno in

9    this case for a vacation.

10             It seems like he got permission from ICE.  I'm not

11   sure whether he got permission from pretrial services without

12   consulting with them.  But in any case, the issue for the Court

13   is flight risk or a danger to the community.

14             The fact that he affirmatively went out of his way and

15   got permission from an agency of the federal government who was

16   supervising him to get permission to go to Fresno with his

17   family does not say anything about whether he is a flight risk

18   or not.  He got permission.  Perhaps he didn't get permission

19   from pretrial services.  I'm not sure without knowing more

20   information.  But he did get permission from at least ICE to go

21   to Fresno.

22             We also have records from the Gilbert Public Schools,

23   and these show that his son has been in those schools for the

24   past six years.  He just finished eighth grade, and he's

25   already enrolled to be a freshman at Mesquite High School, and

1    school begins on August 4th.  These are substantial ties to the

2    community, and he is not a flight risk.

3            Finally, we submitted 12 letters from his family and

4    friends informing the Court that he is not a risk of danger or

5    flight.  Instead, he's a dedicated, hard working father,

6    husband, son, brother, uncle, nephew, neighbor, and friend.

7            The Court has received letters from his wife Claudia,

8    his son Martin Junior, his father-in-law Ramon, his

9    sister-in-law Bianca, his other sister-in-law Uraya (phonetic),

10   his sister Anna, his Aunt Martha, his brother Luis, his niece

11   Brittany, his sister Edith, and his neighbor Bill, and his

12   pastor.  And each of these letters to the Court underscores the

13   type of person Mr. Gutierrez is.  He's deeply committed to his

14   family, and he has dedicated his life to his children.

15           As the Court's aware and as the government just noted,

16   Mr. Gutierrez and his family suffered unimaginable loss and

17   grief in 2019 when his daughter passed away from serious

18   medical conditions.  And this tragedy brought the entire family

19   together as they processed their grief.

20           Mr. Gutierrez provides for his family.  He's

21   maintained steady employment as a painter.  And he even takes

22   his son to work with him occasionally to instill in him the

23   values of hard work and responsibility.

24           Similarly, his sister Anna submitted a letter to the

25   Court where she explains that she is a single mother to her

1   children.  And she relies on Mr. Gutierrez to help her whenever

2   she needs.

3           In short, his deep, unending commitment to his family

4   demonstrates that he is neither a flight risk nor a danger.

5   His wife and children and his entire family absolutely need

6   him.  And, as he has shown, he consistently has supported them.

7           Now, I'd like to address the exhibit that the

8   government attached to its response to our motion for

9   consideration.

10          The government spent significant space in its response

11  addressing this exhibit.  The government's exhibit is a, quote,

12  release questionnaire that was prepared after Mr. Gutierrez was

13  initially arrested in this case.

14          The government implies that this document shows a risk

15  of flight or danger, but in reality it does neither.  The

16  government also states that this report somehow shows that

17  Mr. Gutierrez has engaged in a dispute requiring police

18  intervention.  But, again, it does not even do that.

19          Instead the report simply shows that Mr. Gutierrez was

20  arrested for failure to pay a fine, and it appears from the

21  report that this fine was driving related.  And the charge for

22  which he was arrested was a misdemeanor, and he was not even

23  convicted of that charge.

24          The government points out that the original call was

25  for a, quote, domestic violence verbal dispute, but there are

UNITED STATES DISTRICT COURT

1    no details about this alleged verbal dispute, and the

2    government provides none.

3            Critically there isn't even an applicable statute

4    cited in the report which indicates that the alleged verbal

5    dispute was not even a violation of the law.

6            And of course even assuming there was a verbal

7    dispute, there is no indication of who was involved.  And the

8    report does not even indicate where the call came from.

9            So the government's sole exhibit fails to counter the

10   clear and convincing evidence that we have submitted showing

11   that Mr. Gutierrez is not a flight risk or a danger.

12           Pretrial services recommended, based on his

13   performance, that he be allowed to remain in the community

14   pending sentencing.  He has no felony convictions other than

15   this instant 1326 offense.  And his record shows he is not

16   dangerous.

17           He's simply dedicated to working hard to support his

18   family, friends, and neighbors.  And he has nowhere to go but

19   Gilbert where he raises his minor children with his wife

20   Claudia.

21           We ask that the Court follow the recommendation of

22   pretrial services and allow him to be released pending

23   sentencing.  As he has shown, he is fully dedicated to

24   remaining here, following his conditions of release, and

25   showing up for future proceedings.

1    And in light of this, 18 U.S.C. 3143(a) requires his
2    release.  Thank you.
3    THE COURT:  All right.  Ms. Marsh.
4    MS. MARSH:  Yes, Your Honor.  18 U.S.C. 3143 does not
5    require the defendant's release.  In fact, in citing to the
6    word shall in the statute, defense implies that that word shall
7    modifies the -- a requirement of release.
8    That's not the government's reading of the statute,
9    nor do I believe it's the correct reading of the statute.  The
10   judicial officer shall order that a person who has been found
11   guilty of an offense and who is awaiting imposition or
12   execution of a sentence, other than a person for whom the
13   Federal Sentencing Guidelines does not recommend a term of
14   imprisonment, be detained.
15   There's then a comma and an exception.  I believe the
16   government -- the Court is in a position where there is a
17   presumption essentially or at least, at very least, the statute
18   reads shall be detained because he is facing a term of
19   imprisonment, as I outlined in my response and as the Court
20   requested at the time of the original hearing on detention
21   here.  The defendant is facing a term of imprisonment of 10 to
22   16 months based on his criminal history calculation and the
23   circumstances surrounding his case.
24   He is an individual who is awaiting imposition of
25   sentence or execution of sentence.  And there is a term of

1    imprisonment that will be recommended.  And the statute reads

2    that the judicial officer shall detain such a person unless

3    defense counsel has -- defendant has proven by clear and

4    convincing evidence that the defendant is not a flight risk or

5    a danger.

6              Here, Your Honor, the government is not asserting that

7    he's a danger.  His criminal history record does not suggest

8    violence or danger, but it does detail a long history of

9    failure to comply with the laws of the United States.

10             Defense counsel argued that all of his sentence -- all

11   of his previous convictions have been immigration related, and

12   while that is not inaccurate that they have been motivated by

13   immigration and two -- three of his four prior convictions

14   prior to this felony conviction were for misdemeanor

15   immigration offenses, one of those convictions was for fraud,

16   document fraud.  He presented a false ID.  And while that may

17   not be a significant distinction, it is a distinction from the

18   way it's argued by defense.

19             A prior conviction for fraud implies that someone may

20   be willing to break the laws of the United States using fraud

21   or deceit.

22             Additionally, in looking at his -- And that criminal

23   history goes back to 2009.  And then he has a number of further

24   violations in 2014, two in 2014, one in 2015, and then the

25   incident for which he was brought into custody in this case.

1    And I agree with defense counsel that we do not have a detailed

2    history of the domestic violence verbal dispute that brought

3    Gilbert police to the defendant's house that day.

4         But there is certainly evidence before this Court that

5    he was brought into police custody, that he came into -- he

6    came to law enforcement's attention because the police had to

7    respond to a domestic violence verbal dispute in 2019,

8    September 27th of 2019.

9         It is accurate that then he was handed over to Phoenix

10   PD to be processed for failure to pay fines for driving on a

11   suspended license.

12        None of those are serious crimes.  The government

13   agrees that those are not violent offenses.

14        However, they are further indication of a failure to

15   follow the laws of the United States that imply a failure to

16   comply -- the possibility of a failure to comply with the

17   Court's orders on release.

18        Additionally, while the government agreed to his

19   release originally in this case back in 2019, it was based on

20   the tragic circumstances that faced Mr. Gutierrez and his

21   family at the time.

22        We are differently situated now.  And while he has

23   performed well on supervised release, again, the government has

24   no dispute with that.  Performance on pretrial release is the

25   baseline.  It is the expectation for someone who is released.

1   It is not equal to clear and convincing evidence that he does

2   not pose a flight risk.

3           Further, the life that he has built here in the

4   United States, while I agree defense has offered evidence that

5   he has a home here and a bank account and a family here and

6   that he's worked here, he did all of that while he was

7   violating the laws of the United States.

8           And while I sympathize with his family, it is still

9   true that all of the evidence defense counsel has submitted was

10  conduct while he was here in the United States after having

11  been warned that he could not return not once, not twice, but

12  at least three, I believe four times.  He was here in violation

13  of those orders by immigration and by the federal courts of the

14  United States, and he was here in violation of the law.

15          I don't know whether the defendant received permission

16  from pretrial services for his travel to California.

17  However -- And it sounds like he did receive permission to

18  travel from ICE, who monitors the ankle monitor, because they

19  would have been alerted had he not because of the ankle

20  monitor.

21          But unfortunately that is indicative that he may not

22  have even fully understood the conditions of his release and

23  that those would -- If he did not receive permission from

24  pretrial, which I agree is not clear before the Court today, it

25  would indicate, again, a confusion or misunderstanding and

1    inability to follow the rules of release.

2            The defendant does pose a flight risk, and he is

3    differently situated now than he was when he was placed on

4    pretrial release.  Now he is convicted of a felony.  Now he is

5    facing a term of imprisonment from 10 to 16 months.

6            And for those reasons, Your Honor, he has -- he does

7    have reason to flee, and he does pose a flight risk in this

8    case.  And for those reasons the Court should continue to

9    detain the defendant.

10           THE COURT:  Well, I have considered all of the

11   information that the parties have brought.  I've looked at the

12   docket in the case as well.

13           And I do find that the motion to reconsider at least

14   is well taken in that some of the information I didn't have

15   previously before me.  There was additional information that

16   was provided about Mr. Gutierrez-Barba's living condition, the

17   new information that his son has now enrolled in high school

18   for the 2021 fall semester.

19           There were new statements that were written to this

20   Court.  And let me just say while I don't discount the family's

21   statements, I take into heightened account that there were

22   letters from neighbors, his pastor avowing to his character and

23   his constant presence with his family.

24           To be sure, it is a very close call.  Let me address

25   here, because I'm not going to address the dangerousness

UNITED STATES DISTRICT COURT

1    component of this because the government concedes that he

2    doesn't meet that criteria, and the Court certainly agrees with

3    that.   There's nothing in Mr. Gutierrez-Barba that presents him

4    as a danger to himself or others.

5              It's a bit of the stretch of the government's

6    argument, though, however, to say that because he does not

7    comply with court orders, the order that he stay removed

8    creates a risk of flight.   It's a bit of a stretch in my view.

9              This is a very difficult circumstance that

10   Mr. Gutierrez-Barba is in, and I think some of those arguments,

11   I think, are going to be repeated at the sentencing hearing.

12             And then the Court will consider them when it goes

13   through the sentencing factor analysis.

14             But here the Court is only considering whether or not

15   there is clear and convincing evidence of him not being a risk

16   to flee pending sentencing.   The fact that he remains in the

17   same residence, that he in fact asked for permission from a

18   government agency before he traveled out of state at least, in

19   my view, shows that he was cognizant enough to seek from a

20   government agency that permission.   If the ICE officials denied

21   it, I suspect Mr. Gutierrez-Barba would not have gone.

22             And so that situation inures to his benefit.   And

23   oftentimes, as counsel knows, there are individuals that are

24   situated like Mr. Gutierrez-Barba who may not get the clarity

25   that they need in terms of their conditions of release.   But

1    here he sought permission.

2         The difficulty here, though, is it's clear that

3    Mr. Gutierrez-Barba is pending a sentence of incarceration.

4    But even the fact of incarceration -- excuse me -- the fact of

5    conviction itself wasn't enough to get Mr. Gutierrez-Barba to

6    skip his court date.  He has made all of the appearances that

7    he was required to meet.  And, again, I think the totality of

8    all of this information taken together meets, in my view, the

9    clear and convincing hurdle that he is not a flight risk.

10        The -- Let me just say something about the age of the

11   fraud conviction.  It's something that the Court will consider

12   in the criminal history calculation of the sentencing

13   guidelines.

14        But looking at the fraud conviction of 2009,

15   Mr. Gutierrez-Barba obviously was differently situated back

16   then.  He didn't have a family.  He didn't have these children.

17        And so I think that sort of pushes, in my mind, that

18   in the column of not being relevant to the consideration of the

19   Court for these purposes.

20        And I think one of the things that I will say, finding

21   that, I think, Mr. Gutierrez-Barba remains suitable for

22   continued release pending sentencing, I noted in some of the

23   family letters that they refer to his situation as an

24   immigration matter.

25        It is no longer an immigration matter.  It is a matter

1    of a criminal conviction.  These are two different sets of

2    systems.  It's an administrative hearing in the immigration

3    context.  This is a criminal prosecution proceeding.

4             And I say that to make that clear because inevitably

5    the Court will have to impose a sentence.  And that sentence

6    will have to be a consideration of incarceration.  It's the

7    difference between an administrative hearing and a criminal

8    prosecution hearing.

9             And so I want to make sure -- And I'm sure Mr. Deates

10   and Ms. Johnson have done everything that they can to make that

11   clear to the family.  But I want to make sure that they don't

12   come into this with rose colored glasses.  And it is indeed a

13   set of circumstances that shouldn't be taken lightly but in any

14   event.

15            And so I will release Mr. Gutierrez-Barba under the

16   conditions that were previously imposed.  However, I want to

17   make sure -- And those previous conditions were imposed at

18   document 24.

19            He will be released under the third-party custodian

20   order that Magistrate Judge Burns issued.

21            Mr. Gutierrez-Barba is ordered, again, to appear at

22   all proceedings as required and to surrender for service of any

23   sentence imposed.

24            He is not to commit any federal, state, or local

25   crime.  He is to cooperate in the collection of DNA sample if

1    the collection is authorized under 42 United States Code

2    Section 14135(a).  He is to immediately advise the Court, his

3    counsel, and the government in writing of changes in his

4    address or telephone number.

5          He is not to travel outside of Arizona unless express

6    prior court or pretrial services permission is granted.

7          Mr. Gutierrez-Barba, do you understand that?  The

8    Court has to make the determination of whether or not you can

9    travel outside of the -- of Arizona.

10          It is not going to be the decision of Immigration

11   Customs Enforcement.  It will be the Court.  You will have to

12   clear it with pretrial services.

13          But the best thing for you to do if at any time -- And

14   I would advise that I would not -- I certainly would not grant

15   you permission to travel outside of the United States while

16   you're pending sentencing.  But if for whatever reason you wish

17   to do so, I would suggest you clear it first with your counsel,

18   Ms. Johnson or Mr. Deates.  And hopefully they will persuade

19   you against asking for that.  But, in any event, you will have

20   to seek permission if you so wish to travel.

21          You are to report as directed to the U.S. Pretrial

22   Services at the appointed number they gave you.

23          You are to be placed in the third-party custody of

24   Luis Gutierrez-Barba.

25          You are to refrain from excessive use of alcohol and

1      not use or possess any narcotic or other controlled substance,

2      which is defined by 21 United States Code Section 802, unless

3      you are prescribed by a licensed medical practitioner in the

4      course of their legitimate medical practice.

5              But this provision does not permit the use or

6      possession of medical marijuana even with a physician's written

7      certification.  And you are to maintain weekly contact with

8      your counsel, Ms. Johnson and Mr. Deates, by Friday noon of

9      each week.

10             And so --

11             MS. MARSH:  Your Honor, may I request one additional

12     condition?

13             THE COURT:  You may.

14             MS. MARSH:  And I think maybe we had wished for this

15     at the time and missed it when he was originally released, but

16     because he's on pretrial release through the Court and through

17     ICE, could we cross-reference or add a condition that he must

18     also follow all of the conditions of release from Immigrations

19     and Customs Enforcement?

20             THE COURT:  I think what I will do is add the language

21     to the extent they are not inconsistent --

22             MS. MARSH:  Agreed.

23             THE COURT:  -- Mr. Gutierrez Barba will comply with

24     his release conditions according to Immigration Customs

25     Enforcement release order.

1          And so is there anything further from you, Ms. Marsh?

2          MS. MARSH:  No, thank you, Your Honor.

3          THE COURT:  Mr. Deates?

4          MR. DEATES:  No, Your Honor.  Thank you.

5          THE COURT:  All right.  Then we are adjourned.

6     (Proceedings recessed at 2:36 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          <u>C E R T I F I C A T E</u>

2

3          I, LINDA SCHROEDER, do hereby certify that I am duly

4     appointed and qualified to act as Official Court Reporter for

5     the United States District Court for the District of Arizona.

6          I FURTHER CERTIFY that the foregoing pages constitute

7     a full, true, and accurate transcript of all of that portion of

8     the proceedings contained herein, had in the above-entitled

9     cause on the date specified therein, and that said transcript

10    was prepared under my direction and control.

11         DATED at Phoenix, Arizona, this 15th day of September,

12    2021.

13

14

15                              s/Linda Schroeder
                          Linda Schroeder, RDR, CRR
16

17

18

19

20

21

22

23

24

25