UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

United States of America,     )
                              )
              Plaintiff,      )     CR-19-1224-PHX-DJH
                              )
         vs.                  )     Phoenix, Arizona
                              )     August 17, 2021
Martin Gutierrez-Barba,       )
                              )
              Defendant.      )
                              )
_____ )

BEFORE:  THE HONORABLE DIANE J. HUMETEWA, JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SENTENCING


APPEARANCES:
For the Government:
          U.S. Attorney's Office
          By: ALANNA RACHEL KENNEDY, ESQ.
          40 North Central Avenue, Suite 1800
          Phoenix, AZ  85004

For the Defendant Gutierrez-Barba:
          Federal Public Defender's Office
          By: MATTHEW DEATES, ESQ.
          850 West Adams Street, Suite 201
          Phoenix, AZ  85007



Official Court Reporter:
Linda Schroeder, RDR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 32
Phoenix, Arizona  85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1          THE CLERK:  This is case number CR 19-1224,

2   United States of America versus Martin Gutierrez-Barba, on for

3   sentencing.

4          MS. KENNEDY:  Good afternoon, Your Honor.  Alanna

5   Kennedy for the United States.

6          THE COURT:  Good afternoon.

7          MR. DEATES:  Good afternoon, Your Honor.  Matthew

8   Deates on behalf of Martin Gutierrez-Barba, who is with me at

9   counsel table.

10         THE COURT:  All right.  Good afternoon, Mr. Deates.

11  Good afternoon to you, Mr. Gutierrez-Barba.

12         All right.  Now, Mr. Deates, please come to the podium

13  with your client.

14         MR. DEATES:  Yes, Your Honor.

15         THE COURT:  All right.  Mr. Gutierrez-Barba, this is

16  the time set for entering judgment and sentencing on your case.

17  You appeared before this Court for a bench trial, and that

18  occurred back on June the 1st of 2021, this year.  And after

19  the bench trial, I did find you guilty as charged in the

20  indictment for reentry of a removed alien, in violation of

21  Title 8 United States Code Section 1326(a).  And I now reaffirm

22  that conviction.  And today we are here for sentencing on that

23  conviction.

24         I have reviewed the presentence investigation report

25  that was provided to me by the presentence investigation report

1    writer.  And did you, sir, have an opportunity to review that

2    report, which includes sentencing recommendations?

3              THE DEFENDANT:  Yes.

4              THE COURT:  And did you go through the report with

5    Mr. Deates?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Was he able to answer all of your

8    questions about what is written in the presentence

9    investigation report?

10              THE DEFENDANT:  Yes.

11              THE COURT:  And are you satisfied with the services of

12    your counsel?

13              THE DEFENDANT:  Yes.

14              THE COURT:  Now, Mr. Deates, I have no objections to

15    the presentence investigation report.  Is that correct?

16              MR. DEATES:  That's correct, Your Honor.

17              THE COURT:  And I have no objections from the

18    government?

19              MS. KENNEDY:  That's correct, Your Honor.

20              THE COURT:  There being no objections, I will adopt

21    the advisory sentencing guidelines that are calculated in the

22    presentence investigation report.

23              Mr. Gutierrez-Barba, these calculations are at Page 4

24    of the presentence investigation report.  As you know, the base

25    offense level number assigned to the crime of reentry of

1  removed alien is a level eight.  Now, there are two levels that

2  are added to that because you do have two or more convictions

3  for misdemeanor illegal entry.  Those convictions occurred back

4  in March of 2014 and July of 2014 as well as May of 2015.

5  The adjusted offense level therefore is a level ten.

6  You do receive a two-point reduction because you did -- you did

7  accept responsibility.  And you do not receive the three-point

8  reduction because you are not otherwise eligible for it.

9  And so that results in a total offense level of eight.

10  You are in a criminal history category of IV.  Those offenses

11  that count toward your criminal history include the October

12  2009 sentence you received for committing fraud with

13  identification documents, which you received a 75-day term of

14  custody and for which you were ordered removed from the

15  United States, the March 2014 misdemeanor illegal entry for

16  which you received a 105-day term of incarceration, the July

17  2014 misdemeanor illegal entry conviction for which you

18  received a 180-day term of incarceration, and the May 2015

19  misdemeanor illegal entry for which you received a 180-day term

20  of custody.

21  Your offense level of 8 and your criminal history

22  category of IV results in a sentencing guideline range of 10 to

23  16 months in custody.  And the Court does note that you do have

24  a total of 72 days which you served in pretrial detention.

25  Now, before the Court does impose a sentence,

1    Mr. Gutierrez-Barba, I will tell you there were a number of

2    documents that I did review as well.  That includes your

3    counsel, Mr. Deates, sentencing memorandum, which he is seeking

4    only a time served sentence, that is, the 72 days that you've

5    already served.  And I have read your letter as well as the

6    letters of your wife and family members.

7          I've also reviewed the government's sentencing

8    memorandum in which they seek a low end term under your

9    guideline range.

10         Before the Court does impose a sentence, is there

11   anything that you wish to say on your own behalf?

12         THE DEFENDANT:  Yeah.  I take full responsibility for

13   breaking the law.  It's things that I have to do because I've

14   got kids here.  My wife's out.  I've got to take care of them

15   and work for them and pay all my bills and stuff like that.  I

16   don't come here to break the law besides the one that I broke

17   already.  I'm here just to work and provide for my kids.

18         THE COURT:  All right.  Mr. Deates, and, again, I have

19   read your memorandum.  And so if there's anything in addition

20   that you want to highlight or wish to add, please do so now.

21         MR. DEATES:  Yes, Your Honor.  We want to emphasize

22   the fact that Mr. Gutierrez has already spent 72 days in

23   presentence custody in this matter.  Those were 72 days that he

24   lost out on supporting and being with his family.

25         As all the materials before the Court make clear,

1    Mr. Gutierrez's family is most important to him.  He has six

2    minor children plus a wife who he supports by himself by

3    working hard, by painting.  He's an active member of the

4    community.  Neighbors, pastors have submitted letters to the

5    Court to attest to his good character.

6         Those 72 days were very difficult on him and his

7    family, and that's something that the letters touch on as well.

8         Those were 72 days that Mr. Gutierrez couldn't spend

9    with his kids at the park down the street from the home where

10   they live in Gilbert, 72 days where he couldn't go to church

11   picnics at the church where he and his family have attended

12   since 2016.  And not only do we have the number 72 days, we

13   have two separations in this case, two traumatizing events

14   where Mr. Gutierrez was separated from his family.  His kids

15   were separated from their father.  His wife had the unthinkable

16   task of telling his kids that their dad was not coming home to

17   console their tears.  It's been an incredibly traumatic two

18   years for the family.  And that's not even considering the

19   other circumstances that the family has gone through.

20        During the first time that he was in custody, that was

21   for about a month and a half after his initial arrest.  This

22   was in late 2019.  That was at the same time that his infant

23   daughter was in critical condition in a hospital.  She had been

24   born prematurely and suffered from numerous life-threatening

25   conditions, including rare genetic diseases, that meant that

1    she was destined for a short and tragic life.  She ended up

2    passing away when she was just 16 months old.  And that was

3    thankfully after the Court allowed Mr. Gutierrez to be released

4    so he could be with his family during those final moments of

5    his daughter's life.

6          But before that, he was in custody at CoreCivic for a

7    month and a half.  And that's a month and a half that he could

8    have been spending with his terminally ill infant daughter and

9    being with his family during an unspeakable, terrible time in

10   their lives.

11         Every day during that time he woke up in his cell at

12   CoreCivic and thought about his infant daughter who was in a

13   hospital dying, and he couldn't be with her.  He has been

14   punished for his offense in this case.

15         And then this year, after the Court found him guilty

16   of the offense after the bench trial, he was again separated

17   from his family.  Thankfully it was for less than a month, but

18   it still was a traumatizing event for he and his family.  His

19   kids had just gotten done with school, and he was looking

20   forward to spending the summer with them, and he was not able

21   to do that.  He was not able to be there with his children.

22         As the Court knows, Mr. Gutierrez was brought to the

23   United States as a young child by his parents.  He was raised

24   in the Phoenix area.  He went to Phoenix public schools.  He

25   started his life, his family here.  His children are all

1    United States citizens, and he works hard as a painter to

2    support them.

3        As all the letters demonstrate, he is a loving, hard

4    working father, husband, brother, son, neighbor, and friend.

5    And as the government's revised deportation policies show, our

6    community is better off with Mr. Gutierrez in it, because

7    without him, his family, including his six minor children,

8    would not have his love or critical support that gets them

9    through each and every day.

10        Mr. Gutierrez has already been thoroughly punished for

11    his offense.  His family, it's clear, has been punished too.

12        And as the family letters show, in particular his

13    children have been traumatized by their two separations from

14    their father.  A third would be unbearable for him and his

15    family.

16        Mr. Gutierrez has been under this Court's supervision

17    for almost two years now.  And there have been no incidents.

18    Two departments of this court, pretrial services and probation,

19    have undertaken extensive investigation of his background, of

20    his character.  They've seen him.  They've supervised him.  And

21    both pretrial services and probation note that he is a low risk

22    in this community.  He hasn't broken any laws since he was

23    arrested in this case.  And his criminal history is basically

24    limited -- is limited to the fact that he is unauthorized to be

25    in this country.

1    I'd like to spend a moment on the government's

2 argument about progressive sentencing. And as the Court is

3 aware, the government raises this argument about progressive

4 sentencing in nearly all of these cases. They always say that

5 a higher sentence, a harsher sentence is necessary to afford

6 deterrence. And while the government always makes this

7 argument in these cases, what's always been missing is evidence

8 to support this premise that a harsher sentence leads to more

9 deterrence.

10    And I suspect that's because there is no evidence to

11 show that harsher sentences lead to greater deterrence. In

12 fact, all the evidence shows that certainty of punishment,

13 certainty of being caught is what deters people, not the

14 harshness of the sentence.

15    In fact, the Department of Justice, the United States

16 Department of Justice, issued a finding about -- It's called

17 "National Institute of Justice Five Things About Deterrence."

18 It lists five things that the Department of Justice believes

19 deters crime.

20    And it also addresses certain misconceptions about

21 deterrence.

22    1.  The certainty of being caught is a vastly more

23 powerful deterrent than the punishment;

24    2.  Sending an individual convicted of a crime to

25 prison isn't a very effective way to deter crime;

1          3.   Police deter crime by increasing the perception

2     that criminals will be caught and punished; and

3          4.   Increasing the severity of punishment does little

4     to deter crime.

5          So it seems to me that this U.S. Attorney's Office is

6     not on the same page as Main Justice when it comes to the

7     reasons for its sentencing requests.  Main Justice understands

8     that harsher sentences do not lead to more deterrence.  They've

9     even published this.  This has been published since May of

10    2016.  And yet the government continuously says without support

11    that harsher sentences are necessary in these cases.

12         And so because Mr. Gutierrez was caught, he was

13    separated from his family twice, two traumatic events, he spent

14    72 days in detention at CoreCivic, including a month and a half

15    missing out on the final months of his infant daughter's life,

16    he has been punished.  He has been deterred.  He was here to

17    support his family.  He was here to do what he thought was

18    best, what was instilled in him, providing for the family.  And

19    given that he has been punished thoroughly, we ask that the

20    Court impose a sentence of time served followed by a term of

21    supervised release if the Court deems that necessary.

22         Thank you.

23         THE COURT:  Ms. Kennedy.

24         MS. KENNEDY:  Your Honor, in considering Ms. Marsh's

25    sentencing memo, as the Court is aware, we are requesting the

1   low end sentence of ten months followed by one year of

2   supervised release.  That's the same sentence that probation is

3   recommending.

4        I understand Mr. Deates' argument.  However, the

5   question is not whether Mr. Gutierrez-Barba is going to be

6   removed.  It's when.  And the current policy is not removing

7   individuals who are in Mr. Gutierrez-Barba's position, but that

8   is a temporary policy.  We cannot predict what Congress will or

9   will not do in the future.

10        As recently as July 26, so just a couple weeks ago,

11   DHS was resuming their expedited removals of family units, so

12   it's certainly moving in that direction.

13        Mr. Gutierrez-Barba committed a crime.  And I

14   understand that he and Mr. Deates are differentiating that by

15   saying it's an immigration crime, and it should be treated

16   differently.  But that's simply not the case.  He illegally

17   reentered the United States, and that's a crime that he

18   committed in a similar means three times before.

19        His history and characteristics show that he has

20   difficulty following the laws of the United States and

21   specifically related to immigration.

22        Deterrence is obviously a significant concern here in

23   addition to respect for the law and considering his own

24   characteristics and the need to ensure just punishment.

25        I understand that he wants to be with his family, and

1       his family wants to be with him.  I think that that is a very

2       understandable feeling.  But this is precisely the issue that's

3       contributing to Mr. Gutierrez-Barba's ability to follow the

4       law.

5               And his letters and the sentencing memorandum suggest

6       that he is seeking immigration relief and talking about things

7       like good moral character.  And that's simply outside this

8       Court's jurisdiction.  We're here because he committed a crime

9       and needs to be held accountable for those repeated violations.

10              He does not have legal authorization to be here.  And

11      he's going to need to make arrangements for that in the future

12      as it pertains to his family.  That does not involve illegally

13      reentering the country.

14              He served the 72 days.  That's roughly two and a half

15      months.  His last two 1325 convictions, as Mr. Deates

16      mentioned, were for the 180 days.  But here, Your Honor, based

17      on his own history and characteristics, the need to ensure just

18      punishment, to ensure adequate deterrence and respect for the

19      law, those factors outweigh any mitigating factors here.  And

20      the low end sentence of ten months is perfectly reasonable and

21      complies with the 3553(a) factors, Your Honor.  And for those

22      reasons, that is the sentence that the government is

23      recommending followed by the additional one year of supervised

24      release.  And I also move to remit the special assessment.

25              THE COURT:  Well, Mr. Gutierrez-Barba, the Court must

1    consider all of the sentencing factors under the law that

2    governs sentencing in these types of cases.  They include the

3    nature of the crime that you are now convicted of.  This is

4    your first felony illegal reentry offense.

5         And the Court here is concerned because based on your

6    prior history, from as early as about age 22, you had your

7    first misdemeanor illegal entry.  And that first illegal

8    misdemeanor reentry offense resulted in a two-day jail term and

9    a removal.  That was back in 2009.

10        And at that time the -- it appears that you did only

11   stay away for a limited period of time, and then you were then

12   apprehended and caught for this misdemeanor fraud with

13   fraudulent identification documents.  This too related to your

14   attempting to come into the United States illegally.

15        And then we have the convictions in 2014, of which

16   there were two, and then in 2015, all of these for the same

17   repeated conduct.  Each time you had the benefit of a plea to

18   which you entered, which gave you a misdemeanor conviction.

19        And it makes, in my view, this first felony all the

20   more serious because it demonstrates a repeated ignoring of the

21   laws of the United States, but it also shows something that I

22   think you probably now regret, you and your family.  You came

23   here as a young child.  I recognize that.  And I will give you

24   some credit for cultural assimilation.

25        Unfortunately, for whatever reason, your parents did

1    not see fit to get you citizenship or to receive any sort of

2    way for you to legally remain here.

3            And the unfortunate thing now is that there are two

4    separate systems.  There's a separate system that deals with

5    how a person comes into the United States through an

6    administrative process and this process that you've come

7    through.

8            And I recognize, Mr. Gutierrez-Barba, that you have

9    developed a family here.  You have friends, family members,

10   people in your church, people at your children's school.  You

11   appear to be in all other respects a law-abiding person, except

12   for the fact that you are not here legally.

13           And though you might think that that's a technical

14   problem, it's actually a legal problem, a criminal legal

15   problem, because our Congress has enacted the laws that say it

16   is.  And until that changes, this is the circumstance that you

17   find yourself in.

18           So, on the one hand, the decision is to fight to stay

19   with your family, which I'm sure that you are trying to do

20   through the administrative process, and, on the other hand,

21   recognizing that if you are found in the United States, that

22   this is the situation that you find yourself in, serving

23   additional 180 days, 105 days in custody away from your family,

24   away from the ability to work.

25           And you are not the only one that is in this

1    circumstance.  I see many individuals in your situation, and

2    many of their family members have to decide what to do.

3           And here I have not heard of any plan.  There's no

4    indication from any of your family or you as to how you're

5    going to try to face this problem.

6           Would you be able to find a place to live just on the

7    other side of the United States border where your family can

8    perhaps move and be close to you?

9           I don't know.  You haven't presented that to me.

10          And so based on what I see, it's just a continuous,

11   repeated pattern of your ignoring the law.  And I understand

12   that in your heart, you feel that you're doing the right thing

13   by your family.  But by the laws of the United States, you are

14   offending the law.

15          It's a very difficult situation that you find yourself

16   in, but it's one that is not insurmountable.

17          You have a large family.  You have large community

18   support.  And together I'm sure that they can try to find a way

19   that your children can be close to you.  But you have to

20   recognize, Mr. Gutierrez-Barba, you now have a felony on your

21   record.  You are already in a criminal history category of IV.

22   And there are only, I'm sure Mr. Deates told you, six

23   categories.

24          This will likely put you in a criminal history

25   category of V.  So if you're found again in the United States

1    under these circumstances and charged, your sentencing exposure

2    is only going to get higher and higher.

3            And these are some of the real world implications that

4    you're confronted with.

5            And I give you every credit, Mr. Gutierrez-Barba,

6    because everything before me suggests that you are otherwise

7    law abiding, that you're contributing to your family, that you

8    care about your children, that you care about your community.

9    But this Court has to follow the law.  And I would hope,

10   Mr. Gutierrez-Barba, feeling at home in the United States, you

11   understand why the rule of law is important.

12           And so I want to say that I am not unsympathetic to

13   your situation.  But I think that the time for feeling sympathy

14   has to make way for the time to act, for your family and you to

15   come together to act to try to make a plan to make this work so

16   that you're not spending half of your adult life in and out of

17   custody because of this situation.

18           I have considered all of the factors before me,

19   including the factors of 3553(a).  I don't find

20   Mr. Gutierrez-Barba to be a danger in the respect that he would

21   harm himself or others.  I do find that he is in need of a

22   sentence to promote respect for the law.  I do find that he is

23   in need of a deterrent sentence.

24           I do recognize that his highest misdemeanor offense

25   has yielded him at least two 180-day terms of incarceration.

1          I don't find that he is in need of rehabilitation in

2     terms of alcohol or substance abuse.  I do find that there is

3     some need to impose a sentence recognizing his cultural

4     assimilation.

5          And the Court will impose a sentence that will not

6     create an unwarranted disparity amongst others who are

7     similarly situated who have faced their first felony

8     immigration conviction.

9          And so is there any legal cause why sentence should

10    not now be imposed?

11         MS. KENNEDY:  Not from the government, Your Honor.

12         MR. DEATES:  No, Your Honor.

13         THE COURT:  Pursuant to the Sentencing Reform Act of

14    1984, it is the judgment of the Court that Martin

15    Gutierrez-Barba is committed to the Bureau of Prisons for a

16    term of six months.

17         The government has moved to remit the

18    special assessment fee of $100, and the Court will so order.

19         The Court finds that you do not have an ability to pay

20    fine and orders that the fine be waived.

21         Now, on release from custody, you shall be placed on

22    supervised release for a term of 12 months.  While on

23    supervised release, you shall comply with the mandatory and

24    standard conditions of supervision adopted by this court in

25    General Order 17-18.

1          And of particular importance, you shall not commit

2   another federal, state, or local crime while on supervision.

3          Within 72 hours of being released from custody, you

4   shall report in person to the U.S. Probation Office.  And you

5   shall comply with the following special conditions:

6          If you are deported, you must not reenter the

7   United States without legal authorization.  And I should

8   explain to you, Mr. Gutierrez-Barba, because this is the first

9   time you will be on a supervised release condition, if you are

10  found in the United States within the year that you begin your

11  supervised release term, that would be a separate violation of

12  your supervised release conditions.  And the Court could send

13  you back to custody for violating those conditions of release.

14         In addition to that, the government would have the

15  discretion to charge you with a new offense of being here

16  illegally.

17         Now, Mr. Gutierrez-Barba, because you proceeded to a

18  bench trial on this charge, you do retain all of your rights of

19  appeal both with respect -- well, with respect to the judgment

20  in the case of conviction as well as the sentence the Court has

21  just now imposed.  However, if you do intend to appeal either

22  of those two matters, you only have 14 days in which to file

23  your notice of intent to do so, and Mr. Deates can advise you

24  with regard to that.

25         Is there anything further from the government?

1          MS. KENNEDY:  No, Your Honor.  Thank you.

2          THE COURT:  Is there anything further from you,

3     Mr. Deates?

4          MR. DEATES:  Yes, Your Honor.  Because the Court has

5     imposed an additional term of imprisonment and because

6     Mr. Gutierrez intends to appeal certain rulings of the Court

7     that have -- that have been made through the course of this

8     case, we ask that the Court, under statutory authority, allow

9     Mr. Gutierrez to be -- to remain released while his appeal is

10    pending.

11         That authority comes from 18 U.S.C. 3143(b), and that

12    provision says that "The judicial officer shall order that a

13    person who has been found guilty of an offense and sentenced to

14    a term of imprisonment shall be detained unless the judicial

15    officer finds by clear and convincing evidence that the person

16    is not likely to flee or pose a danger to the community and

17    that the appeal is not for purpose of delay and raises a

18    substantial question of law or fact likely to result in

19    reversal or order for a new trial."

20         Here the two provisions are satisfied.

21         The first provision of 3143(b), which is subsection

22    (a), "the clear and convincing evidence that a person will not

23    likely flee or pose a danger to the community while released,"

24    that was recently found by the Court in June when the Court

25    allowed Mr. Gutierrez to be released pending sentencing.  So

1    less than two months later or about two months later we argue

2    that that circumstance is still true, and the Court should find

3    that that is true.

4          The second provision of 3143(b) says that "The appeal

5    must not be for purpose of delay, and the appeal must raise a

6    substantial question of law or fact that is likely to result in

7    reversal or order for a new trial."

8          Now, the Ninth Circuit has had occasion to interpret

9    this provision on numerous occasions, and the Ninth Circuit as

10   recently as 2003 in *United States versus Garcia* said, "At first

11   glance it might appear that a strong appeal is a threshold

12   requirement under this provision.  However, this provision must

13   be considered in light of the Ninth Circuit's interpretation of

14   that requirement."

15         The Ninth Circuit has made clear that the defendant

16   need not show that he will present an appeal that it will

17   likely be successful; only that a non-frivolous issue will be

18   presented, and that if that issue is decided in the defendant's

19   favor, it would result in reversal or could satisfy one of the

20   other conditions of that provision.

21         So here Mr. Gutierrez plans to appeal the Court's

22   ruling on the 1326(d) motion.  That appeal raises a substantial

23   question of law or fact likely to result in reversal within the

24   meaning of that provision as interpreted by the Ninth Circuit.

25         In his 1326(d) motion, Mr. Gutierrez presented

1   argument and district court case law showing that his due

2   process rights were violated and that his -- that he was also

3   prejudiced by that violation.  While the Court disagreed with

4   Mr. Gutierrez and ruled against him, that doesn't mean that his

5   appeal of that issue is not a substantial question of law or

6   fact likely to result in reversal.  It's -- This appeal is not

7   for purposes of delay.  He's merely using the same arguments

8   that other district courts in the Ninth Circuit have found to

9   be valid to show a due process violation.

10          And it raise -- And it raises a substantial question

11  because it's not frivolous.  Other district courts have agreed

12  with Mr. Gutierrez's position.

13          THE COURT:  Districts in this -- District courts in

14  this circuit?

15          MR. DEATES:  In the Ninth Circuit, yeah.

16          THE COURT:  Well, I think the problem, Mr. Deates,

17  with your argument at this point, you should have briefed it

18  prior to the sentencing hearing.  The government hasn't had an

19  opportunity to review any of the authorities that you're citing

20  right now.  Neither has the Court.

21          And at this juncture, what I'm going to do is order

22  that Mr. Gutierrez-Barba turn himself into the U.S. Marshals

23  Office within 14 days.  That is, 14 days from today's date,

24  before noon, he is to turn himself into the U.S. Marshals

25  Service here in this building.  If within that time period you

1  can file a motion related to release pending appeal and give

2  the government sufficient time to respond, then I can consider

3  your argument.  And I may sua sponte order him not to turn

4  himself in.  And I may in fact, in looking at your authorities

5  and your argument, I may consider both of these provisions

6  together to determine that he must go forward and turn himself

7  in.

8         So I think that's the better way to proceed.

9         MR. DEATES:  Yes, Your Honor.  And with that, we have

10  no -- nothing further.

11        THE COURT:  All right.  And should you file that

12  memorandum -- it seems that you have the outline of your

13  argument already made -- then I would suggest that you do so by

14  week's end and give the government at least seven days in which

15  to respond.

16        MR. DEATES:  Yes, Your Honor.  Thank you.

17        THE COURT:  All right.  Is there anything further,

18  Ms. Kennedy?

19        MS. KENNEDY:  No, Your Honor.  Thank you.

20        THE COURT:  Thank you then.  We are adjourned.

21     (Proceedings recessed.)

22

23

24

25

1          <u>C E R T I F I C A T E</u>

2

3          I, LINDA SCHROEDER, do hereby certify that I am duly

4  appointed and qualified to act as Official Court Reporter for

5  the United States District Court for the District of Arizona.

6          I FURTHER CERTIFY that the foregoing pages constitute

7  a full, true, and accurate transcript of all of that portion of

8  the proceedings contained herein, had in the above-entitled

9  cause on the date specified therein, and that said transcript

10  was prepared under my direction and control.

11          DATED at Phoenix, Arizona, this 15th day of September,

12  2021.

13

14

15                              s/Linda Schroeder
                                Linda Schroeder, RDR, CRR
16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**